United States District Court
Southern District of Texas
**ENTERED**
October 17, 2022
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| TORIE JACKSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-21-4210 |
| | § | |
| WAL-MART, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

**MEMORANDUM AND OPINION**

Torie Jackson alleges that she was injured after she slipped and fell on a puddle of cooking

oil in a Houston Walmart on January 16, 2021. (Docket Entry No. 20 ¶ 7).  Jackson sued Walmart

(appearing as Wal-Mart Stores Texas, LLC) in Texas state court, asserting negligence and

premises liability claims. (Docket Entry No. 1-2 at ¶¶8–10).  Walmart timely removed and

successfully moved to dismiss the negligence claims.   (Docket Entry No. 16).   Discovery

proceeded on the remaining premises liability claim.  On July 7, 2022, Jackson filed an amended

complaint.  (Docket Entry No. 20).  Walmart has moved for summary judgment, arguing that,

under Texas law, Jackson's claim for premises liability fails because the record does not support

a finding that Walmart had actual or constructive knowledge of the spilled cooking oil before

Jackson fell.  (Docket Entry No. 21).[1]

Based on the pleadings, the motion for summary judgment, the record, and the applicable

law, the court denies the motion.  The reasons are set out below.

---

[1] Walmart's motion refers to Jackson's original state-court petition; however, the amended complaint is
materially identical to the original petition, and simply corrects the address of the Walmart in question.  The
changes in the amended complaint do not affect the parties' arguments or the court's conclusions.

## I.     The Rule 56 Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)). "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quoting reference omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying" the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the non movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non movant the burden of demonstrating by competent summary judgment proof that there is [a dispute] of material fact warranting trial.'" *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration in original) (quoting reference omitted). "However[,] the movant 'need not negate the elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets its Rule 56(c) burden, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted). The nonmovant "must identify specific

evidence in the record and articulate the 'precise manner' in which the evidence" aids their case.
*Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference
omitted).  Of course, all reasonable inferences are drawn in the nonmovant's favor.  *Loftin v. City
of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022).  But a nonmovant "cannot defeat summary judgment
with 'conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'"  *Jones
v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

## II.    Analysis

Because this court's jurisdiction is based on diversity, state law applies.  *Threlkeld v. Total
Petroleum, Inc.*, 211 F.3d 887, 891 (5th Cir. 2000).  Walmart argues that Texas law, which the
parties do not dispute applies here, does not permit a premises liability claim on the facts Jackson
alleges and that the summary judgment record presents.  The questions are whether there are
factual disputes material to determining whether Walmart had actual or constructive knowledge of
the cooking oil spill on the floor, and, if so, had a duty to take reasonable action to warn of the risk
or remove it.

Premises liability claims fall into two categories: negligent activities and premises defect
claims.  "When distinguishing between a negligent activity and a premises defect, [the Texas
Supreme Court] has focused on whether the injury occurred by or as a contemporaneous result of
the activity itself—a negligent activity—or rather by a condition created by the activity—a
premises defect."  *Sampson v. Univ. of Texas at Austin*, 500 S.W.3d 380, 388 (Tex. 2016) (citation
omitted).  A negligent activity claim requires a plaintiff to show that she was "injured by or as a
contemporaneous result of the activity itself rather than by a condition created by the activity."
*Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992) (citations omitted).  The Texas Supreme
Court has "repeatedly characterized . . . slip-and-fall claims as premises defect cases because the

3

injuries were alleged to have resulted from physical conditions on property," not from a contemporaneous activity. *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 472 (Tex. 2017).

Jackson alleges that she was injured by a dangerous condition—spilled cooking oil—on a Walmart floor. This allegation is a classic presentation of a premises defect claim, not a negligent activity claim. *See H.E. Butt Grocery Co. v. Warner*, 845 S.W.2d 258, 258–59 (Tex. 1992) (a plaintiff who slipped on a puddle made up of water, chicken blood, and other fluids could assert only a premises defect claim). When she fell, Jackson was in the aisle containing, among other things, cooking oil. (Docket Entry No. 24-1 at 49:24–50:2).

Jackson states that the oil likely came from a damaged bottle of cooking oil that was on the shelf above where she fell. (Docket Entry No. 24 at 3). Walmart employees noticed the bottle after her fall. (*Id.*). Jackson submits a photograph of the damaged bottle of cooking oil in her response to Walmart's motion. (Docket Entry No. 24-4). The record also contains a Walmart report about the incident. In the report, a Walmart employee stated that there was a "slippery substance" on the floor of the aisle where Jackson fell. (Docket Entry. No. 24-3).

Under Texas law, "a property owner generally owes those invited onto the property a duty to make the premises safe or to warn of dangerous conditions as reasonably prudent under the circumstances." *Robbins v. Sam's East, Inc.*, No. 21-20050, 2021 WL 3713543, at *1 (5th Cir. Aug. 20, 2021) (per curiam) (quoting *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016)). "To prevail on a premises liability claim against a property owner, an injured invitee must establish four elements: (1) the owner had actual or constructive knowledge of the condition causing the injury; (2) the condition posed an unreasonable risk of harm; (3) the owner failed to exercise reasonable care to reduce or eliminate the risk; and (4) the owner's failure to use such

care proximately caused the invitee's injuries." *Id.* (citing *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 358 (5th Cir. 2017)). Walmart's motion concerns the first element, knowledge.

A plaintiff may satisfy the knowledge element in a slip-and-fall case by pointing to evidence showing that: "(1) the defendant caused the condition; (2) the defendant actually knew of the condition; or (3) 'it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it.'" *Id.* (quoting *McCarty*, 864 F.3d at 358). The summary judgment record does not support an inference that Walmart caused the oil spill or had actual knowledge of its presence. Jackson testified that she did not have any information as to how or when the spill occurred. (Docket Entry No. 24-1 at 80:3–9, 81:1–82:2). Jackson answered requests for admissions by admitting that she did not know how the oil got on the floor or who was in the area before she fell. (Docket Entry No. 21-3 at 5–7). There is no evidence to support an inference that Walmart caused the spill or had actual knowledge of it before Jackson fell.

An inference of constructive notice "requires proof that an owner had a reasonable opportunity to discover the defect." *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 567 (Tex. 2006) (per curiam). A court analyzes "the combination of proximity, conspicuity, and longevity" of the alleged defect: the proximity of the premises owner's employees to the hazard, the conspicuousness of the hazard, and how long the hazard was in place. *Id.* at 567–68 (quoting *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 816 (Tex. 2002)). For a premises owner to be charged with constructive notice, a dangerous condition must have "existed for some length of time." *Reece*, 81 S.W.3d at 815 (citations omitted). If the dangerous condition is conspicuous, "then an employee's proximity to the condition might shorten the time in which a jury could find that the premises owner should reasonably have discovered it." *Id.* at 816. On the other hand, "if an

employee was in close proximity to a less conspicuous hazard for a continuous and significant period of time, that too could affect the jury's consideration of whether the premises owner should have become aware of the dangerous condition." *Id.* Some temporal evidence is required for a premises-liability plaintiff to defeat a motion for summary judgment. *Id.* ("Without some temporal evidence, there is no basis upon which the factfinder can reasonably assess the opportunity the premises owner had to discover the dangerous condition."). "The so-called 'time-notice rule' is based on the premise that temporal evidence best indicates whether the owner had a reasonable opportunity to discover and remedy a dangerous condition." *Id.* (citation omitted). "[W]hen circumstantial evidence is relied upon to prove constructive notice, the evidence must establish that it is more likely than not that the dangerous condition existed long enough to give the proprietor a reasonable opportunity to discover the condition." *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998).

To comply with the time-notice rule and establish constructive notice, Jackson relies on video surveillance footage produced by Walmart, which shows the aisle in which the spill occurred beginning an hour before Jackson's fall. (Docket Entry No. 24-5). According to Walmart, "all of [its] associates are responsible for making visual inspections of the store during their shifts." (Docket Entry No. 24-6 at 4). The video evidence cited by Jackson suggests that two Walmart employees had the opportunity to detect the spill. At a few seconds past 8:29 p.m., a woman who also appears to be a Walmart employee, wearing a blue Walmart vest, walks down the aisle past the location of the spill, turns around, and leaves the aisle. Then, around 9:25 p.m., a Walmart employee in a bright yellow vest looks at something located on the left—from the viewer's perspective—side of the aisle, at the bottom of the frame. About a half-minute later, Jackson turns right into the aisle, slips, and falls. The brief presence of the Walmart employees, each of whom

has a duty to inspect store conditions, suggests that Walmart had at least some opportunity to discovery the hazardous condition created by the spilled oil.  *See City of Fort Worth v. Posey*, 593 S.W.3d 924, 932 (Tex. App.—Fort Worth 2020, no pet.) (The premises owner's employees' "regular proximity to the condition gave them ample opportunity to discover any hazard it posed.").

Although the video shows that Walmart employees had the opportunity to discover the spilled oil because there is evidence that at least two employees walked down the aisle near the cooking oil, the record does not suggest the substance was particularly conspicuous.  Jackson described the substance as "oily," "yellowish," with black slide marks from her shoe after she fell as the only mark in the puddle.  (Docket Entry No. 24-1 at 46:16–23, 70:7–25).  The light-colored substance likely did not stand out against the light-colored floor.  A photograph taken after Jackson's fall shows a small and inconspicuous amount of liquid on the floor.  (Docket Entry No. 24-4).  The lack of conspicuousness is not itself fatal to Jackson's claim, but it does mean that the oil must have been on the floor long enough to find that Walmart had constructive notice of the spill and the duty to clean it up or be charged with constructive notice.  *Cf. Shirey v. Wal-Mart Stores Tex., L.L.C.*, 699 F. App'x 427, 428 (5th Cir. 2017) ("For instance, a particularly conspicuous hazard, or an employee's close proximity to an inconspicuous hazard for a continuous and significant period of time, may reduce the amount of time within which a premises owner should have become aware of the dangerous condition." (quoting reference omitted).); *Spates*, 186 S.W.3d at 568 (observing that, with respect to an inconspicuous hazard present for potentially less than a minute, "[h]ad there been evidence [the hazard] had been on the floor for an extended period of time, reasonable jurors might assume that the employee [near the hazard] should have seen it.").

7

The parties contest the third factor discussed in *Spates*: the longevity of the alleged premises defect.  The surveillance video recording that Jackson submitted shows the area where Jackson fell for the hour before the fall.  The video also shows Jackson's fall.  The parties agree that the video does not show when or how the oil came to be on the floor.  Based on what the video does not show, Jackson argues that the logical inference is that the oil came from a damaged bottle of cooking oil found on a store shelf in the aisle where she fell, and that the condition existed for at least an hour before her fall.  (Docket Entry No. 24 at 6–7).  Walmart replies that "[t]o conclude that the condition was on the floor for more than 1 hour prior to her incident is grossly misleading and fails to eliminate other possible sources/circumstances that may have caused the condition at issue to appear on the store floor." (Docket Entry No. 29 at 5).  Walmart points out that the video shows other customers walking through the area of the alleged spill without incident.  (*Id.*).  Walmart contends that any of these shoppers might have caused the spill, meaning that the substance could have been present for far less than an hour and not long enough to create an inference of constructive notice.  (*Id.*).  Walmart also notes that the substance itself is not visible on the video.  (*Id.*).

Jackson argues that even if the oily liquid was not on the floor for a full hour or more before she fell, the video shows another customer slipping in the same area approximately 45 minutes before Jackson fell. (Docket Entry No. 24 at 7).  Walmart replies that Jackson's description of the video evidence is misleading, and that this customer slipped on a different area of the floor. (Docket Entry No. 29 at 6).  Walmart argues that, assuming that the other customer slipped on the same substance, 45 minutes is insufficient as a matter of law to charge a premises owner with constructive notice.  (*Id.* at 7).  In support of this argument, Walmart points to *Threlkeld* and this

court's decision in *Shirey v. Wal-Mart Stores Texas, LLC*, 15-cv-3368, 2017 WL 1177967 (S.D. Tex. Mar. 30, 2017).

Walmart's argument overlooks the courts' holistic consideration—as required by Texas law—of the varying factors that each case presents, and the courts' refusal to create a bright-line rule rule as to how long a substance must have been on the floor to trigger constructive notice. *Threlkeld* concerned a plaintiff who fell in a puddle of water in a convenience store restroom. 211 F.3d at 889–90. The plaintiff's only evidence in support of his constructive notice argument was his own testimony that the water "looked as if it had been there for a while." *Id.* at 892. The restroom had been inspected at most 45 minutes before the plaintiff fell. *Id.* at 890. One of the defendant's employees testified that, if the bathroom at been in the condition the plaintiff described, she would have noticed it. *Id.* at 892. The plaintiff conceded that he had "no way of knowing" how long the water was on the floor before he fell, and he conceded that a previous customer could have spilled the water just before the plaintiff entered the restroom. *Id.*

Unlike the plaintiff in *Threlkeld*, Jackson has video evidence from which a jury might reasonably infer that the substance was on the floor for 45 minutes to an hour or more before she fell. *Shirey* cited *Threlkeld* and other cases for the proposition that "[a] dangerous condition that has existed for forty-five minutes or less has been considered legally insufficient to show constructive knowledge." 2017 WL 1177967, at *2. *Shirey* involved a plaintiff who slipped on a single grape that fell on the floor approximately 17 minutes before she fell. *Id.* Neither case states that a defendant can never be charged with constructive notice when a substance on the floor is present for 45 minutes or less; under Texas law, "[w]hat constitutes a reasonable time for a premises owner to discover a dangerous condition will, of course, vary depending upon the facts and circumstances presented." *Reece*, 81 S.W.3d at 816. Courts have denied summary judgment

motions when the hazard had been present for less than 45 minutes.  *See, e.g.*, *Martinez v. Target Corp.*, No. 20-cv-3481, 2021 WL 3813361, at *5 (S.D. Tex. Aug. 26, 2021) (a reasonable inference from circumstantial video evidence suggested that the spill was present for 40 minutes before the plaintiff's fall); *Patel v. Walmart Stores, Inc*., No. 15-cv-427, 2016 WL 4161820, at *3 (E.D. Tex. Aug. 5, 2016) (clear video evidence establishing that the spill occurred 24 minutes before the plaintiff's fall).

The court finds that the video evidence, and the inferences it supports, create genuine factual disputes material to determining whether Walmart had constructive notice that a slippery substance was in the grocery aisle where Jackson fell.  The video, which recorded the area near the spill for an hour before it occurred, supports the inference that it existed for at least an hour before Jackson's fall.  The fact that other shoppers did not slip and fall on the small quantity of spilled oil does not mean that the substance was not there.  And the fact that there is no evidence showing precisely how or when the substance came to be on the floor does not mandate summary judgment under the totality of the circumstances.  *See Moreno v. Wal-Mart Stores Tex*., LLC, 506 F. Supp. 3d 503, 508–509 (S.D. Tex. 2020) (denying summary judgment and noting that "slip-and-fall plaintiffs may use circumstantial evidence to meet the temporal requirement of constructive knowledge").

The totality of the circumstances here distinguishes this case from those in which courts found video evidence of a similar character insufficient to establish constructive notice.  Those cases are distinguishable because both involved hazards too small to be detected by the low-quality video cameras involved.  *Avila v. Fiesta Mart, L.L.C*., No. 14-20-00133-CV, 2021 WL 4270035, at *2 (Tex. App.—Houston [14th Dist.] Sept. 21, 2021, no pet.) (the black-and-white video did not show how the two grapes came to be on the floor); *Cox v. H.E.B. Grocery, L.P*., No. 03-13-00714-

CV, 2014 WL 4362884, at *3 (Tex. App.—Austin Aug. 27, 2014, no pet.) ("[T]he poor quality of the video recording precludes any conclusion from the video alone that the peach piece was ever on the floor."). Jackson argues that a bottle of cooking oil fell, spilled some amount of oil on the floor, and was put back on the shelf before the video recording began. Her argument is supported by the video and by the photograph showing a damaged bottle of cooking oil on the shelf above the aisle where she fell. Though the video is not high resolution, it presumably would have captured a falling bottle—whether it fell from the shelf or from another customer's cart. No falling bottle is visible on the video.

The Fifth Circuit's decision in *Seigler* is also instructive. The plaintiff slipped and fell on a slippery substance next to a "hot case" displaying cooked rotisserie chickens. *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 475–76 (5th Cir. 2022). The substance appeared to be congealed chicken grease. *Id.* The court denied summary judgment for the defendant, holding that a jury could infer, based on its own experience, the length of time required for hot chicken grease to cool and congeal. *Id.* at 479–80. The defendant argued that the plaintiff was not entitled to this inference, "because there is no evidence that the chicken grease fell from the hot case, and . . . [because] it is equally plausible that the grease fell from a customer's shopping cart in front of the hot case only after the chicken had been removed from the counter and carried around for long enough to have cooled down." *Id.* at 480. The court rejected this argument, stating "[t]hat there may be other conceivable possibilities [as to the origin of the grease] does not change that it is reasonable, given the location of the spill directly in front of the hot case, to infer that the grease was hot when it fell on the floor." *Id.* at 480. The holding of *Seiglar* indicates that the lack of conclusive evidence regarding the origin of a hazard is simply one factor of many that a court must

assess, at the summary-judgment stage, in determining whether a reasonable jury might infer constructive notice.

The record evidence, including the video recording, supports an inference that the oil was on the floor at least 45 minutes or an hour before Jackson's fall, giving Walmart a reasonable time in which to discover the spill and mop it up or warn shoppers of the spill.  *Gonzales*, 968 S.W.2d at 936.

### III.    Conclusion

The court denies Walmart's motion for summary judgement.

SIGNED on October 17, 2022, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge